IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOY L. BOWENS, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>MAZUMA FEDERAL CREDIT UNION; and DOES 1-10,<br><br>    Defendants. | CASE NO.<br><br><br>JURY TRIAL DEMANDED ON ALL COUNTS TRIABLE |

## COMPLAINT

Plaintiff Joy L. Bowens ("Plaintiff") by her attorneys, hereby brings this class and representative action through this action against MAZUMA CREDIT UNION ("Mazuma" or "Credit Union" or "Defendant(s)) and Does 1-10. All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or her counsel, which are based on personal knowledge. Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys. Each allegation either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## VENUE AND JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has

-1-

jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Jurisdiction is proper because (1) on information and belief the claims of plaintiffs, aggregated together, exceed $5,000,000 and (2) some putative class members are citizens of different states than the defendant. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because at the time of the transaction giving rise to this lawsuit, Defendant is headquartered in this district.

## NATURE OF THE ACTION

2. This is a class and representative action brought by Plaintiff to assert claims in her own right, in her capacity as the class representative of all others similarly situated, and in her representative capacity as a private attorney general on behalf of the members of the general public. This class action seeks monetary damages, restitution, punitive damages, and injunctive relief against Defendant Mazuma arising from Mazuma's breach of its contracts and Federal Law with consumers in its implementation of an overdraft fee program. Specifically, Plaintiff asserts that Mazuma charged overdraft fees for transactions for which there were sufficient funds in the checking account to cover the transactions, thereby breaching the express terms of its consumer contract. Mazuma also violated 12 C.F.R. § 1005.17 by coercing consumers into opting into its overdraft program.

## PARTIES

3. Plaintiff is a resident of Kansas City, Missouri, and opened up her Mazuma credit union account at a branch in Kansas City on or about July 18, 1998.

4. Based on information and belief, Defendant Mazuma is a Missouri state chartered credit union headquartered in Overland Park, Kansas.

5. At all material times herein, each defendant was the agent, servant, co-conspirator and/or employer of each of the remaining defendants, acted within the purpose,

-2-

scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants, and ratified and approved the acts of the other defendants. However, each of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

6. Whenever in the complaint reference is made to any act, deed, or conduct of a defendant corporation, the allegation means the defendant corporation engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the defendant corporation's ordinary business and affairs. (Doe Defendants are collectively referred to herein and are included in the term "Defendant.")

7. As to the conduct alleged herein each act was authorized ratified or directed by Defendants' officers, directors, or managing agents.

## FACTUAL ALLEGATIONS

**A. Mazuma's Unlawful Overdraft Program**

8. Mazuma Credit Union is a state chartered credit union with branches in Missouri and Kansas. One of the services offered by Mazuma to customers is a checking account. One of the benefits Mazuma offers with a checking account is a debit card that can be used for a variety of transactions including buying goods and services, as well as the ability to write checks, withdraw from ATM machines, schedule ACH (Automated Clearing House transactions) such as certain recurring payments, and other type of transaction items that debit from the checking account. In connection with processing debit items (including debit card, ATM, check, ACH and other types of transactions), Mazuma charges overdraft fees when it's
-3-

automated program determines there are insufficient funds in the account.

9. Credit Unions, like banks, have increasingly turned to overdraft fees as a highly lucrative profit center. An FDIC report estimated that overdraft fees represent 74% of the total services charges that are imposed on deposit accounts in the United States. According to the June 11, 2013 report entitled CFPB Study of Overdraft Programs[1], credit unions generated $7.4 billion in overdraft fees in 2012 (p. 14).

10. The high cost of an overdraft fee is usually unfairly punitive. In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrafted their account by mistake. (May 2012 Pew Charitable Trust report entitled "Overdraft America: Confusion and Concerns about Bank Practices", p.4) More than 60% of the transactions that resulted in a large overdraft fee were for less than $50. (June 2014 Pew Charitable Trust report entitled "Overdrawn", p.8). More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (Id, p. 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee. (Id., p. 10).

11. Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and nonwhite account holders are among those who were more likely to be assessed overdraft fees. (Id, p.1). A 25 year old is 133% more likely to pay an overdraft penalty fee than a 65 year old. (Id, p.3). More than 50% of the customers assessed overdraft fees earned under $40,000 per year. (Id, p.4). Nonwhites are 83% more likely to pay an overdraft fee than whites. (Id, p.3).

12. In reaction to banks and credit unions taking advantage of millions of customers

---

[1] http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf

through the unfair practice of charging overdraft fees, and using methodologies that maximize the possible number of expensive overdraft fees to be charged, a substantial amount of litigation on these issues have occurred over the past few years. The results of this litigation include a trial verdict and nationwide settlements wherein banks and credit unions have been ordered or have agreed to pay unfairly assessed overdraft fees back to their customers in an amount in the hundreds of millions of dollars as well as changes in their overdraft practices.

13. Furthermore, the federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies. In 2010, the Federal Reserve Board enacted regulation that financial institutions were only permitted to charge overdraft fees on ATM and one-time debit card charges if they obtained the affirmative consent of the customer. 12 C.F.R. § 1005.17 ("Opt In Rule").

14. To qualify as affirmative consent, the opt-in notice must include, but is not limited to the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft;
- The opt-in consent must be obtained separately from other consents and acknowledgements;
- The consent cannot serve any purpose other than opting into the overdraft program;
- The consent cannot be a pre-selected checked box.

If the financial institution did not obtain proper affirmative consent from the consumer that meets all of the requirements of the Opt in Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

15. Additionally, pursuant to 12 C.F.R. § 1005.17(b)(3) a financial institution cannot offer different terms for the account depending upon whether the customer opted in to the overdraft program.

16. For all times relevant to this complaint, Mazuma has had an overdraft program in place for assessing overdraft fees which is contrary to the express terms of its overdraft agreements with members, is contrary to how Mazuma represents its overdraft program to its members, and is contrary to what consumers would expect as to when they would be assessed overdraft fees. Mazuma contracts with its members that it is entitled to assess an overdraft fee when Mazuma pays an item (an item is a check, debit card withdrawal, ATM or ACH) when it is presented without sufficient funds to pay the item. (Terms and Conditions "Account Agreement", p. 2, attached hereto as Exhibit 1.)

17. Based on information and belief, Mazuma' contractual promises in the Account Agreement to only assess overdraft fees when there is not enough money in the account to pay the item (insufficient funds) was also provided to customers in other disclosures and marketing materials it provided to customers.

18. However, contrary to the Account Agreement that Mazuma will only charge overdraft fees when there is not enough money/sufficient funds in the checking account, Mazuma's practice when assessing an overdraft fee on a transaction is to ignore whether there is money in the account, and instead makes the automated decision on assessing overdraft fees based on an artificial internal balance (available balance) rather than the actual balance. The available balance is the actual balance minus anticipated debits (that may not occur), and deposits not yet credited to the account. While the available balance may be used for determining whether to authorize the transaction, it is directly contrary to the language in the

agreements as to when it will assess overdraft fees. The result is that Mazuma improperly charges members overdraft fees in situations when there is money/sufficient funds in the account to pay the item.

19. Additionally, Mazuma improperly coerces consumers into opting into the overdraft program. Mazuma's policy as stated in its Overdraft Privilege Authorization Form (Exhibit 2) is that if a consumer does not opt in, and their account later triggers an overdraft, Mazuma will suspend their debit card leaving them without ready access to the money in their account. This is a violation of 12 C.F.R. § 1005.17(b)(3) which provides that:

> "A <u>financial institution</u> shall provide to <u>consumers</u> who do not affirmatively consent to the institution's <u>overdraft service</u> for ATM and one-time debit card transactions the same <u>account</u> terms, conditions, and features that it provides to <u>consumers</u> who affirmatively consent, except for the <u>overdraft service</u> for ATM and one-time debit card transactions."

In other words, a financial institution cannot offer less favorable account terms for customers who do not opt into overdraft protection. But this is exactly what Mazuma has done. For customers who do not opt in, if they incur an overdraft Mazuma will suspend their debit card. Because Mazuma's practices unlawfully coerce customers to opt-in to the overdraft program, customers have not affirmatively opted in as required by 12 C.F.R. § 1005.17.

**B.     Unlawful Overdraft Fees Assessed to Plaintiff Joy Bowen**

20. Plaintiff was harmed by the practice of charging overdraft fees when there were sufficient funds in the account to cover the transaction. Plaintiff entered into an agreement with Mazuma where Mazuma would only charge overdraft fees if there was not money/sufficient funds to cover the transaction at time of posting. But to give one example, on January 12, 2015 began the day with a balance of $96.98. Her first two posted transactions on January 12, 2015 were a debit card transaction for $20 at a Shell, and a $7.99 NetFlix charge. Despite that Plaintiff had sufficient funds/money to cover both of those transactions, Mazuma assessed

-7-

Plaintiff a $28 overdraft fee for each of the transaction in violation of their contractual agreement with Plaintiff.

21. Furthermore, the assessment and unilateral taking of improper overdraft fees further reduces the balance and amount of funds in the account, resulting in aggressively causing subsequent, otherwise non-overdraft transactions into transactions for which further overdraft fees are assessed. A complete evaluation of Mazuma's records is necessary to determine the full extent of Plaintiff's harm from this practice.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this case, and each of her respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23.

23. The "Sufficient Funds Class" is composed of:

> "All persons who have or have had accounts with Mazuma who incurred overdraft fees for transactions when there were sufficient funds in their checking account to pay the transactions within the five years preceding the filing of this Complaint."

24. The "Opt-In Class" is composed of:

> "All persons who have or have had accounts with Mazuma who opted in to the overdraft program at a time when Mazuma's policy was to cancel ATM and debit cards if the member had not opted-in to overdraft protection and who were charged overdraft fees within one year preceding the filing of this complaint."

25. Excluded from the above Class is any entity in which Defendant has a controlling interest, and officers or director of Defendant, this Court and its employees, and any employees of the law firms representing Plaintiff and the putative classes.

26. The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of the members of the Class is unknown to Plaintiff

-8-

Case 4:15-cv-00758-BP   Document 1   Filed 09/30/15   Page 8 of 16

at this time and can be determined only by appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

27. Membership in the Class is ascertainable. Upon information and belief, Defendant retains the databases, or other documentation, of transactions and account enrollment which can and will be analyzed by an expert to ascertain all members of the Class who have been harmed by the practice. Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. Other than by direct notice, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

28. Common questions of law or fact predominate over questions that may affect only individual Class members. The questions of law and fact common to Plaintiff and the Class members include, among others, the following:

    a. Whether Defendant had standardized Account Agreements during the class period that were provided to customers;

    b. Whether Defendant had standardized Opt-In Agreements during the class period that were provided to customers;

    c. Whether Defendant breached that customer agreement by use of an automated system of assessing overdraft fees for transactions when customers' checking accounts had sufficient funds/money to cover the transactions; and

    d. Whether Defendant's conduct violated 12 C.F.R. § 1005.17.

29. Plaintiff's claims are typical of all of the members of the Class. The evidence

and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members.

30. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection. Plaintiff and his counsel intend to prosecute this action vigorously.

31. The class action is superior to all other available methods for the fair and efficient adjudication of this case or controversy. Because the injury suffered by the Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiff and Class members individually to seek redress for the alleged wrongful conduct. Even if any individual persons or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation(s) would proceed. The class action device is preferable to individual litigation(s) because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiff and the Class members will continue to suffer losses, thereby allowing these violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

## COUNT I

### (For Breach of Contract)

32. The preceding allegation are incorporated by reference and realleged as if fully set forth herein.

33. Plaintiff and each of the Class members entered into contracts covering the subject of overdraft transactions, which was drafted by and is binding on Defendant.

34. The contract authorizes Defendant to assess overdraft fees only for transactions for which there are insufficient funds/money in the account to pay the items.

35. In addition, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

36. The material terms of the contract also included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

37. Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms

-11-

and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

38. Defendant breached the expressed terms of the contract by, inter alia, charging overdraft fees when there were sufficient funds/money in the account to pay the items.

39. Alternatively, Defendant breached the implied covenant of good faith and fair dealing based on this practice.

40. As a proximate result of Defendant's breach of the contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## COUNT II

### (For Unjust Enrichment/Restitution)

41. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

42. Defendant received millions of dollars as a result of the wrongful and unjust misconduct alleged above.

43. As a result, Plaintiff and the Class members have conferred a benefit on Defendant. Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred. Defendant will be unjustly enriched should it be allowed to retain such funds.

44. Plaintiff and the Class members are entitled to restitution of the monies unjustly retained by Defendant. Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

## COUNT III

### (For Money Had and Received)

45. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

46. Defendant has obtained money from Plaintiff and the Class members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

47. As a result, Defendant has in its possession money which in equity belongs to Plaintiff and the Class members which should be refunded to Plaintiff and the Class members. Therefore Plaintiff and the Class members seek relief as set forth in the Prayer below.

## COUNT IV

### (Negligence)

48. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

49. As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. Defendant, and Does 1 through 100, had and continue to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment though its own wrongful acts. Specifically, Defendant, and Does 1 through 10, owed a duty of care to Plaintiff and the Class members to not charge overdraft fees for transactions for which there were sufficient funds in the account.

50. Defendant, and Does 1 through 10, breached this duty by unreasonably mishandling the accounts of Plaintiff and the Class members by taking funds from Plaintiff and the Class members by assessing overdraft fees for transactions when fees should not have been

-13-

Case 4:15-cv-00758-BP   Document 1   Filed 09/30/15   Page 13 of 16

charged.

51. As a proximate result of Defendants' negligence, Plaintiff and each class member has been damaged in an amount to be proven at trial.

## COUNT V

### (For Violation of the Electronic Funds Transfer Act and Regulations Promulgated Thereunder)

52. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

53. Pursuant to 12 C.F.R. § 1005.17 it is unlawful for a financial institution to provide less favorable account terms to members who have not opted in to the overdraft protection program.

54. Mazuma has violated 12 C.F.R. § 1005.17 by the use of a policy whereby credit union members who have not opted-in will have their debit card suspended in the event of an overdrafting transaction.

55. This policy is coercive as well as unlawful, and vitiates any consent that credit union members have provided for participation in the overdraft program.

56. Mazuma's violation of 12 C.F.R. §1005.17, gives rise to liability under the federal Electronic Fund Transfer Act 15 U.S.C. § 1693 et seq. for actual damages, statutory damages, attorney fees and costs of suit.

## PRAYER

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1. For an order certifying this action as a class action;

2. For compensatory damages on all applicable claims and in an amount to be proven at trial;

3. For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4. For an order enjoining the wrongful conduct alleged herein, including ceasing to charge overdraft fees for transactions for which there are sufficient funds in the account, and providing accurate and reliable information regarding the overdraft practice; and enjoining Defendants' practice of suspending the debit cards of members who have not opted-in to the overdraft program who have an overdrafting transaction.

5. For costs;

6. For interest;

7. For attorneys' fees under the Electronic Funds Transfer Act, the common fund doctrine, other applicable law, and the customer account agreement;

8. For such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and the Class demand a triable by jury on all issues so triable.

DATED: September 30, 2015

BY:   */s/Matthew L. Dameron*
Matthew L. Dameron, Bar # 52093
matt@williamsdirks.com
**WILLIAMS DIRKS DAMERON, LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone: (816) 876-2600

Richard D. McCune, CA State Bar #132124*
rdm@mccunewright.com
Jae (Eddie) K. Kim, CA State Bar #236805*
jkk@mccunewright.com
**MCCUNEWRIGHT LLP**
2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Taras Kick, CA State Bar #143379*

-15-

taras@kicklawfirm.com
Thomas A. Segal, CA State Bar #222791*
thomas@kicklawfirm.com
**THE KICK LAW FIRM, APC**
201 Wilshire Boulevard
Santa Monica, California 90401
Telephone:   (310) 395-2988
Facsimile:    (310) 395-2088

**Pro Hac Vice* applications to be submitted

*Attorneys for Plaintiff Joy L. Bowens
and the Putative Class*