# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

JOY L. BOWENS, individually, and on behalf of all others similarly situated,

                Plaintiff,

v.

MAZUMA CREDIT UNION, and DOES 1-10,

                Defendant.

Case No.:  4:15-cv-00758-DW

Judge Assigned:  Beth Phillips

## PLAINTIFF JOY L. BOWENS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES AND COSTS, AND APPROVAL OF CLASS REPRESENTATIVE SERVICE AWARD AND SUGGESTIONS IN SUPPORT THEREOF

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Plaintiff Joy L. Bowens hereby moves this Honorable Court for entry of an Order:

1.      Finally approving the Settlement Agreement reached between Plaintiff and Defendants attached as Exhibit 1 to the Declaration of Taras Kick in Support of the Unopposed Motion for Preliminary Approval;

2.      Finally certifying a settlement class;

3.      Awarding attorneys' fees in the amount of $453,333.33;

4.      Approving claims administrator costs of $34,375; and

5.      Finally approving the class representative service award.

This motion is made on the grounds that the settlement is fair, reasonable and adequate, and that approval is therefore appropriate.  Class Counsel met and conferred with counsel for Defendant about

the motion, and Defendant does not oppose the motion.

This motion is based on this Notice of Motion and Motion, the Suggestions in Support Thereof, the accompanying Declaration of Taras Kick, the accompanying Declaration of Richard McCune, the accompanying Declaration of Eric Kierkegaard of the proposed settlement administrator Garden City Group, the Declaration of Joy Bowens filed in support of the Motion For Preliminary Approval, the Declaration of Robert Weissman of Public Citizen previously filed in support of the Motion for Preliminary Approval, the Declaration of Arthur Olsen filed in support of the Motion for Preliminary Approval, other documents and papers on file in this action, and such other materials as may be presented before or at the hearing on this motion, or as this Honorable Court may allow.

Dated: July 16, 2018                                   Respectfully submitted,

                                                       /s/ Taras Kick
                                                       Taras Kick, *Pro Hac Vice*
                                                       taras@kicklawfirm.com
                                                       Robert Dart, CA State Bar #264060*
                                                       robert@kicklawfirm.com
                                                       **THE KICK LAW FIRM, APC**
                                                       815 Moraga Drive
                                                       Los Angeles, California 90049
                                                       Telephone:   (310) 395-2988
                                                       Facsimile: (310) 395-2088

                                                       Matthew Lee Dameron, Bar  #52093
                                                       matt@williamsdirks.com
                                                       **WILLIAMS DIRKS DAMERON LLC**
                                                       1100 Main Street, Suite 2600
                                                       Kansas City, MO 64105
                                                       Telephone:  (816) 876-2600
                                                       Facsimile:  (816) 221-8763

                                                       Richard D. McCune, *Pro Hac Vice*
                                                       rdm@mccunewright.com
                                                       **MCCUNE • WRIGHT • AREVALO LLP**
                                                       3281 East Guasti Road, Suite 100
                                                       Ontario, California 91761
                                                       Telephone:  (909) 557-1250
                                                       Facsimile:  (909) 557-1275

Attorneys for Plaintiff Joy L. Bowens and
the Putative Class

i

# TABLE OF CONTENTS

I.    SUMMARY ............................................................................................................1

II.   BACKGROUND ....................................................................................................2

      A.    The Settlement is a Very Good Result for the Class Members .........................2

      B.    Investigation and Discovery ..........................................................................3

III.  LEGAL ANALYSIS ............................................................................................4

      A.    The Settlement Should Be Finally Approved ....................................................4

            1.    The Merits of Plaintiff's Case, Weighed Against the Terms of the
                  Settlement, Weighs in Favor of Settlement .......................................5

            2.    The Defendant's Financial Condition Weighs in Favor of Settlement
                  .........................................................................................................6

            3.    The Complexity and Expense of Further Litigation Weighs in Favor of
                  Settlement. ........................................................................................6

            4.    The Amount of Opposition to the Settlement Weighs in Favor of
                  Settlement ..........................................................................................7

            5.    The Extent of Discovery Completed, and the Stage of the
                  Proceedings ............................................................................................

      B.    The Requested Fee Award and Litigation Costs Should Be Approved.............7

            1.    The Fee Award is Appropriate Under a Percentage Approach..............8

                  a. The Benefit Conferred in the Class ....................................................9

                  b. The Risk to which Plaintiff's Counsel Were Exposed.......................9

                  c. The Difficulty and Novelty of the Legal and Factual Issues ...........10

                  d. The Skill of the Lawyers.................................................................10

                  e. The Time and Labor Involved, Including the Efficiency in
                  Handling the Case ...........................................................................10

                  f. The Reaction of the Class.................................................................10

                  g. The Comparison Between the Requested Attorney Fee Percentage and

Percentage Awarded in Similar Cases ..................................................11

2. The Fee Award is Appropriate Under the Lodestar Method ......................12

3. Class Counsel's Costs Should be Awarded ..................................................12

C.      The Proposed Cy Pres Recipients Should be Approved .................................12

D.      The Class Representative Service Award Should be Approved ....................13

E.      Class Notice Satisfied Due Process ....................................................................14

F.      The Proposed Settlement Class Should be Certified ......................................14

1. Class Definition ..................................................................................................14

2.  The Requirement of Numerosity is Satisfied................................................15

3. The Requirement of Commonality is Satisfied............................................15

4. The Requirement of Typicality is Satisfied .................................................16

5. The Requirement of Adequate Representation is Satisfied .........................17

6. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ..................................................................................................................18

a. Common Questions of Law and Fact Predominate.........................18

b. This Class Action is the Superior Method of Adjudication............20

V.      CONCLUSION.........................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United*
    84 F.3d 1525 (8th Cir. 1996) .............................................................................. 16

*Amchem Prods. v. Windsor*
    521 U.S. 591, 117 S. Ct. 2231 (1997).........................................................14, 17, 18, 20

*Ark. Educ. Asso. v. Bd. of Educ.*
    446 F.2d 763 (8th Cir. 1971) ...............................................................................15

*Armstrong v. Bd. of Sch. Dirs.*
    616 F.2d 305 (7th Cir. 1980) ..............................................................................4, 5

*Beckmann v. CBS, Inc.*
    192 F.R.D. 608 (D. Minn. 2000)...........................................................................17

*Bird Hotel Corp. v. Super 8 Motels, Inc.*
    246 F.R.D. 603 (D.S.D. 2007) .............................................................................19

*Boeing Co. v. Van Gemert*
    444 U.S. 472, 100 S. Ct. 745 (1980).....................................................................7, 8

*Boswell v. Panera Bread Co.*
    311 F.R.D. 515 (E.D. Mo. 2015) ..........................................................................19

*Bradford v. AGCO Corp.*
    187 F.R.D. 600 (W.D. Mo. 1999).........................................................................15

*Carpe v. Aquila, Inc.*
    224 F.R.D. 454 (W.D. Mo. 2004)......................................................................17, 18

*Carnegie v. Household Int'l, Inc.*
    376 F.3d 656 (7th Cir. 2004) ............................................................................... 20

*DeBoer v. Mellon Mortg. Co.*
    64 F.3d 1171 (8th Cir. 1995) ..............................................................7, 14, 15, 16

*Donaldson v. Pillsbury Co.*
    554 F.2d 825 (8th Cir. 1977) ...............................................................................16

*Dupler v. Costco Wholesale Corp.*
    249 F.R.D. 29 (E.D.N.Y. 2008) ...........................................................................19

*Erica P. John Fund, Inc. v. Halliburton Co.*
    563 U.S. 804, 131 S. Ct. 2179 (2011)....................................................................18

*Esler v. Northrop Corp.*
    86 F.R.D. 20 (W.D. Mo. 1979)..........................................................................15

*Gray v. Los Angeles Federal Credit Union*, Los Angeles County Superior Court,
    Case No. BC625500.......................................................................................... 11

*Glover v. Standard Fed. Bank,*
    283 F.3d 953 (8th Cir. 2002) ............................................................................ 10

*Gutierrez v. Wells Fargo Bank*
    N.A., 730 F. Supp. 2d 1080 (N.D. Cal. 2010) .....................................................4

*Grunin v. Int'l House of Pancakes*
    513 F.2d 114 (8th Cir. 1975) ...........................................................8, 12, 14

*Hernandez v. Point Loma Credit Union*, San Diego County Superior Court,
    Case No. 37-2013-00053519 ..............................................................................11

*In re Airline Ticket Comm'n Antitrust Litig.*
    953 F. Supp. 280 (D. Minn. 1997)......................................................................12

*In re Aquila ERISA Litig.*
    237 F.R.D. 202 (W.D. Mo. 2006) ......................................................................15

*In re Bankamerica Corp. Sec. Litig.*
    228 F. Supp. 2d 1061 (E.D. Mo. 2002)................................................................8

*In re Emp. Benefit Plans Sec. Litig.*
    Civil No. 3-92-708, 1993 U.S. Dist. LEXIS 21226 (D. Minn. June 2, 1993) .......12

*In re E.W. Blanch Holdings, Inc.*
    No. 01-258 (JNE/JGL), 2003 U.S. Dist. LEXIS 26402
    (D. Minn. June 16, 2003) ...................................................................................11

*In re Checking Account Overdraft Litig.*
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................................4

*In re Control Data Sec. Litig.*
    No. 3-85-1341 (D. Minn. Sept. 23, 1994)...........................................................12

*In re Flight Transp. Corp. Sec. Litig.*
    730 F.2d 1128 (8th Cir. 1984) .............................................................................5

*In re SciMed Life Sec. Litig.*
    No. 3-91-0575, slip op. (D. Minn. July 17, 1995) .................................................12

*In re Select Comfort Corp. Sec. Litig.*
    No. 99-884 (DSD/JMM), 2003 U.S. Dist. LEXIS 26409
    (D. Minn. Feb. 28, 2003) .........................................................................................11

*In re UnitedHealth Grp. Inc. PSLRA Litig.*
    643 F. Supp. 2d 1094 (D. Minn. 2009)......................................................................9

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*
    396 F.3d 922 (8th Cir. 2005) ................................................................................5, 6

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*
    MDL 1559, Master Case No. 4:03-md-01559 This pleading relates to:
    Blando v. Nextel West Corp., et al. Case No.02-921-FJG, 2004 U.S. Dist.
    LEXIS 23342 (W.D. Mo. Apr. 20, 2004) ...............................................................4

*In re Xcel Energy, Inc.*
    364 F. Supp. 2d 980 (D. Minn. 2005).......................................................................9

*Johnston v. Comerica Mortg. Corp.*
    83 F.3d 241 (8th Cir. 1996) ......................................................................................8

*Josefina Hernandez v. Logix Federal Credit Union*, Los Angeles County Superior Court,
    Case No. BC628495...................................................................................................11

*Ketner v. State Employees Credit Union of Maryland, Inc.*,
    Case No. 1:15-cv-03594 (D. Md. 2018) ..................................................................11

*Khoday v. Symantec Corp.*
    No. 11-cv-180 (JRT/TNL), 2016 U.S. Dist. LEXIS 55543
    (D. Minn. Apr. 4, 2016) ..........................................................................................14
*KK Motors v. Brunswick Corp.*
    No. 98-2307 (D. Minn. March 6, 2000)...................................................................12

*Koenig v. United States Bank Nat'l Ass'n (in Re United States Bancorp Litig.*
    291 F.3d 1035 (8th Cir. 2002) .............................................................................8, 11

*Lane v. Campus Federal Credit Union*,
    Case No. 3:16-cv-00037 (M.D. La. 2017) ..............................................................11

*Lees v. Anthem Ins. Cos.*
    No. 4:13CV1411 SNLJ, 2015 U.S. Dist. LEXIS 74902

(E.D. Mo. June 10, 2015)......................................................................... 13

*Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. . Dist. No. 1*
921 F.2d 1371 (8th Cir. 1990) ...............................................................4

*McCollins v. Bayer Corp. (In re Baycol Prods. Litig.)*
265 F.R.D. 453 (D. Minn. 2008).......................................................... 20

*Mills v. Elec. Auto-Lite Co.*
396 U.S. 375, 90 S. Ct. 616 (1970)........................................................7

*Missouri v. Jenkins*
491 U.S. 274, 109 S. Ct. 2463 (1989)....................................................8

*Moralez v. Kern Schools Federal Credit Union*, Kern County Superior Court,
Case No. BCV-15-100538 ....................................................................11

*Newco Atlas, Inc. v. Park Range Constr., Inc.*
272 S.W.3d 886 (Mo. Ct. App. 2008)................................................... 19

*Patrick Lynch v. San Diego County Credit Union*, San Diego County Superior Court,
Case No. 37-2015-00008551 ................................................................11

*Paxton v. Union Nat'l Bank*
688 F.2d 552 (8th Cir. 1982) ............................................................... 16

*Petrovic v. AMOCO Oil Co.*
200 F.3d 1140 (8th Cir. 1999) ...................................................5, 6, 7, 8

*Phitsamay Fernandez v. Altura Credit Union*, Riverside County Superior Court,
Case No. RIC1610873 ......................................................................... 11

*Rainy Lake One Stop v. Marigold Foods (in Re: Milk Prods. Antitrust Litig.)*
195 F.3d 430 (8th Cir. 1999) ...............................................................10

*Santiago v. Meriwest Credit Union*, Sacramento County Superior Court,
Case No. 34-2015-00183730 ................................................................11

*Smilow v. Sw. Bell Mobile Sys.*
323 F.3d 32 (1st Cir. 2003)..................................................................19

*Sprague v. Ticonic Nat'l Bank*
307 U.S. 161, 59 S. Ct. 777 (1939).........................................................7

*Stoneridge Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*,
No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772

(E.D. Mo. June 30, 2005)......................................................................4, 5, 8

*Towner v. 1st MidAmerica Credit Union*,
    Case No. 3:15-cv-1162 (S.D. Ill. 2017)................................................11

*Tracy Fry v. MidFlorida Credit Union*,
    Case No. 8:15-CV-2743 (M.D. Fla. 2018)............................................11

*Transit Cas. Co. v. Certain Underwriters at Lloyd's*
    963 S.W.2d 392 (Mo. Ct. App. 1998).................................................19

*Triarch Indus. v. Crabtree*
    158 S.W.3d 772 (Mo. 2005)..............................................................19

*Tyson Foods, Inc. v. Bouaphakeo*
    136 S. Ct. 1036 (2016)....................................................................19

*Van Horn v. Trickey*
    840 F.2d 604 (8th Cir. 1988)............................................................5, 7

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338, 131 S. Ct. 2541 (2011)................................................15

*Weinberger v. Kendrick*
    698 F.2d 61 (2d Cir. 1982)...................................................................5

*White v. Nfl*
    822 F. Supp. 1389 (D. Minn. 1993).....................................................5

*Williams v. First Nat'l Bank*
    216 U.S. 582, 30 S. Ct. 441 (1910)......................................................4

**Statutes and Regulations**

12 C.F.R. § 1005.17...........................................................................1, 3, 10

Fed. R. Civ. P. 23.............................................................................. passim

**Other Authority**

1 Newberg on Class Actions § 3.13 (3d ed. 1992) ...................................16

2 Newberg on Class Actions § 4:24.........................................................16

I.      **SUMMARY.**

This is a consumer class action alleging that Defendant Mazuma Credit Union ("MCU" or "Defendant") charged overdraft fees based on the "available balance" in customer accounts (*i.e.*, a subset of the actual account balance from which money has been deducted by placing holds on funds earmarked for pending transactions which have not yet posted) rather than on the actual or current balance in the account (*i.e.*, the money actually in the account, sometimes called "ledger" balance). Plaintiff alleges this is in violation of the terms of MCU's contract governing the overdraft program for certain types of transactions. Plaintiff also alleges that Defendant violated Regulation E, 12 C.F.R. § 1005.17 ("Reg. E"), by enrolling credit union members in its overdraft program for subject transactions without obtaining their affirmative consent to do so based on a complete and valid disclosure of the terms of the program. MCU disputes Plaintiff's contentions.

After law and motion practice and discovery into the underlying facts, and after two mediations before the mediator John R. Phillips, the parties presented a proposed settlement of this matter to which this Honorable Court granted preliminary approval. This Court found, preliminarily, that the classes as defined in the Settlement Agreement meet all of the requirements for certification of a settlement class found in the Federal Rules of Civil Procedure and applicable case law (Preliminary Approval Order, ¶¶ 2, 6), that the proposed settlement falls within the range of reasonableness for potential final approval, and that the proposed settlement is the product of arm's length negotiations by experienced counsel after extensive litigation and discovery. (*Id.* ¶ 7.) This Court also found that the proposed notice plan to class members satisfied due process, and ordered that notice of the proposed settlement be served pursuant to it. (*Id.* ¶ 8.)

The parties have complied with this Court's Order regarding notice, and Plaintiff therefore now presents the matter for final approval. As evidenced by the contemporaneously filed declaration of Eric Kierkegaard of the claims administrator GCG, the direct notice program approved by this Court has been very successful. Specifically, 95.99% of the 12,031 class members successfully received the notice ordered by this Court. (Declaration of Eric Kierkegaard [hereafter "GCG Decl."] ¶¶ 5, 15.) Further, the deadline for opting out of the proposed settlement expired on July 11, 2018. Only one (1) class member

has elected to opt out of the proposed settlement being presented for approval to this Court.  This means more than 99.99% of class members have elected to remain in the settlement being presented to this Court for approval.  (GCG Decl. ¶ 19.) This class member's timely request for exclusion and identifying information is attached as Exhibit C to the GCG Declaration.  Finally, although the time to object does not expire until July 31, 2018, as of the date of this filing, there has been only one objection the settlement, and it Is attached as Exxhibit D to the GCG Declaration.[1]  (GCG Decl. ¶ 20.)  This means that to date more than 99.99% of the class members do not object to the settlement being presented for approval by this Court.

In sum, the proposed settlement of this class action is a very good result for class members, and class members' reaction to it to date has been very favorable.

## II.    BACKGROUND

### A.    The Settlement is a Very Good Result for the Class Members

As a result of this lawsuit, and pursuant to the signed settlement contract, on January 1, 2018, MCU changed the manner in which it assesses overdraft fees from the "available balance" as it used prior to this lawsuit instead to the "collected balance" in a member's account.(See Settlement Agreement, attached as Exhibit 1 to the Declaration of Taras Kick in Support of Motion for Preliminary Approval ["Kick Prelim. Decl."], ¶ 2; Declaration of Taras Kick in Support of Motion for Final Approval ["Kick Decl."] ¶24.)  Assessing overdraft fees on members in this new manner resulting from the settlement of this lawsuit rather than on the "available balance" challenged by Plaintiff in the lawsuit will decrease the total amount of overdraft fees charged by MCU over the next four years by  $3 million. (Declaration of Arthur Olsen Filed in Support of Motion for Preliminary Approval ["Olsen Decl."] ¶ 10.)  Further, in addition to this change in practices, under the proposed settlement agreement, MCU also will make a monetary payment of $1,360,000, with no reversion of any residue to MCU. (Settlement Agreement ¶ 1(u).)  The settlement payment will be used to provide restitution to class members, pay the litigation costs, costs of notice and claims administration, attorney fees in the amount

---

[1] The objection is actually signed by Theresa Datica, who resides with, and might be the wife of class member Joel Datica, but who is not a class member herself.  (GCG Decl. ¶ 20.)  Even though she thus might not have standing, her objection is nonetheless addressed *infra*.

of one-third of the new money portion of the settlement payment, which is only 11% of the total value of the settlement (subject to this Court's approval), and a service award to the class representative for her work on behalf of the class.

The manner of distribution of this proposed settlement is especially consumer friendly. It does not require any claims to be made by the class members at all. Specifically, payment will be credited to the class members according to a formula which divides the net settlement fund by the total improper overdraft charges for the relevant period and multiplies the resulting figure by an individual class member's total improper overdraft charge. (Settlement Agreement ¶ 8(d)(iv).) This settlement compensation will be directly deposited into existing customers' accounts, and will be distributed by check to the last known address of all former members, without the need for any claim to be made by the class member. (Settlement Agreement, ¶ 8(d)(v).) Finally, any money that remains after this distribution process, rather than revert to Defendant, is proposed to be divided between two non-profits, Public Citizen, an organization actively involved in protecting consumer rights, and Truman Heritage Habitat for Humanity (if approved by this Court). (Settlement Agreement ¶ 11.)

### B.    Investigation and Discovery

The Complaint in this action was filed on September 30, 2015 (Docket No. 1 "Complaint"), alleging that MCU had breached its contracts with its customers and violated Reg. E by charging overdraft fees for transactions which, to be completed, required less money than was already in the customers' actual or ledger balances. (Complaint, ¶ 2, ¶¶ 16-19.) On December 21, 2015, Defendant filed an Answer to the Complaint, denying generally all material allegations therein, and raising several affirmative defenses. (Docket No. 3.) On February 22, 2016, Plaintiff propounded on MCU its first request for production of documents, identifying 69 categories of documents, its first set of special interrogatories, including 24 interrogatories, and its first set of requests for admission, including 12 requests, to which Defendant responded on April 15, 2016. (Kick Decl. ¶ 14.) On May 18, 2016, Plaintiff propounded on MCU its second set of requests for production, identifying 10 additional categories of documents, to which Defendant responded on June 25, 2016. (Kick Decl. ¶ 14.) On May 25, 2016, Plaintiff took the deposition of three "person most knowledgeable" corporate designees regarding overdraft fees, John Brown, MCU's Vice President of Technology, Laura Kay Eblen, MCU's

3

Director of Payments, and Brandon Michaels, MCU's President and CEO. (Kick Decl. ¶ 14.)
The parties participated in two separate in-person mediation sessions with mediator John R. Phillips.
(Kick Decl. ¶ 15.) The settlement negotiations at all times were at arm's length and adversarial. (Kick Decl. ¶ 15.)

Finally, Plaintiff's database expert, Arthur Olsen, reviewed an analysis of Defendant's class data pertaining to overdraft fees. (Olsen Decl. ¶ 6.) The class data reviewed by Mr. Olsen contained detailed information regarding all overdraft fees assessed by MCU on debit card, check, and ACH transactions for each of the sample months, including, among other things, the account numbers, the date of each overdraft fee, the amount of each overdraft fee, the type of transaction which caused each overdraft fee, (either debit card, check, or ACH), and the balance of the account at the time when each transaction posted to the account. (Olsen Decl. ¶ 7.) Mr. Olsen is considered to be one of the leading experts on overdraft fee database analysis, and has worked on overdraft litigation database analysis in such matters as the multidistrict litigation which took place in Florida (*In re Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.)), and in such matters as *Gutierrez v. Wells Fargo*, 730 F.Supp.2d 1080 (N.D. Cal. 2010). (Olsen Decl. ¶¶ 3, 5.)

As a result of his review of that analysis, Mr. Olsen was able to confirm that MCU charged $3,454,308 in overdraft fees when there was enough money in the account to cover the transaction in question if "holds" on deposits or pending transactions were not taken into account, which is what the Plaintiff's "sufficient funds" theory of the case is. The total settlement value of $4,360,000 represents 126.22% of those damages, whereas the new money portion of $1,360,000 of the settlement fund represents approximately 39.37% of the total "sufficient funds" damages in this case. (Kick Dec. ¶ 24.)

## III. LEGAL ANALYSIS.

### A. The Settlement Should Be Finally Approved.

"There is a long-standing policy favoring settlements of civil actions in federal court." *Stoneridge Inv. Partners LLC v. Charter Communs., Inc.* (*In re Charter Communs., Inc.*), No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772, at *14-18 (E.D. Mo. June 30, 2005) (citing *Williams v. First Nat'l Bank*, 216 U.S. 582, 595, 54 L. Ed. 625, 30 S. Ct. 441 (1910)). "This policy is especially applicable to class action litigation." *Id.* (citing *Armstrong v. Board of Sch. Directors*, 616 F.2d 305,

313 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement." (internal quotation omitted). "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong*, 616 F.2d at 313; *see also Pulaski County Special Sch. Dist.*, 921 F.2d 1371, 1391 (8th Cir. 1990) (such agreements are "presumptively valid"). "It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, MDL 1559, Master Case No. 4:03-md-01559, 2004 U.S. Dist. LEXIS 23342, at *31 (W.D. Mo. Apr. 20, 2004) (citation omitted). "[A] class action settlement is a private contract negotiated between the parties." *Id*. "Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id*.

Therefore, in determining whether to approve a class action settlement, the Court is tasked with determining whether it is "fair, reasonable, and adequate." *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (quoting *In re Flight Transportation Corporation Securities Litigation*, 730 F.2d 1128, 1135 (8th Cir. 1984), *cert. denied*, 469 U.S. 1207 (1985)). "[I]n approving a settlement the district court need not undertake the type of detailed investigation that trying the case would involve." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1998) (citing *Armstrong v. Bd. of School Directors of Milwaukee*, 616 F.2d 305, 314-15 (7th Cir. 1980)). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993).

"A district court is required to consider four factors in determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005). "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Id*. (quoting *Petrovic*, 200 F.3d at 1150). In

addition, courts in this Circuit have held "that there is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel." *In re Charter Communs., Inc.*, 2005 U.S. Dist. LEXIS 14772, at *18 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

### 1. The Merits of Plaintiff's Case, Weighed Against the Terms of the Settlement, Weighs in Favor of Settlement.

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607-08 (8th Cir. 1988). Although Class Counsel does believe this is a strong case in many respects, Class Counsel also acknowledges there were considerable risks to continued litigation. (Kick Dec. ¶23.) For example, if the settlement were not approved, Plaintiff would likely face a motion for summary judgment, as well as an adverse class certification battle, both of which would have uncertain outcomes. (Kick Dec. ¶ 23.) If the case survived and went to trial, Defendant would argue that the contractual language does not require all that Plaintiff believes it to require. (Kick Dec. ¶ 23.) Instead, if the proposed settlement is approved, class members will have the certainty of a substantial payment of new money of $1,360,000 as well as the cessation of the offending practice that this case confronted, with overdrafts now determined according to the "collected balance" as opposed to the "available balance," saving $3 million in overdraft fees over the next four years. The total settlement value of $4,360,000 ($3 million in savings from future overdraft fees plus a $1,360,000 settlement fund) represents approximately 126% of the most likely expected recovery at trial, and the $1,360,000 settlement fund component alone represents approximately 39.37% of that most likely expected recovery at trial.[2] Accordingly, this factor weighs in favor of approving the settlement.

---

[2] Courts have determined that settlements are, of course, reasonable where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd* 899 F.2d 21 (11th Cir. 1990) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even - a thousandth of a single percent of the potential recovery." *Id.*; *see also City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) (a recovery of 3.2 % to 3.7 % of the amount sought is "well within the ball park"), aff'd in part, rev'd on other grounds, 495 F.2d 448 (2d Cir. 1974); *Martel v. Valderamma*, 2015 U.S. Dist. LEXIS 49830 * 17 (C.D. Cal. 2015) (approving a settlement of $75,000 when potential damages were $1.2 million, or about 6%); *In re Toys R US FACTA Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) (approving settlement with *vouchers* (not cash like here) potentially worth a maximum of three percent (3%) *if all possible*

## 2. The Defendant's Financial Condition Weighs in Favor of Settlement.

Where Defendant remains able to pay the settlement amount, that fact has been found to weigh in favor of settlement. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005) ("As to the second factor, there is no indication that Nextel's financial condition would prevent it from raising the settlement amount."); *see also Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) ("While it is undisputed that Amoco could pay more than it is paying in this settlement, this fact, standing alone, does not render the settlement inadequate."). Defendant remains in a solvent financial condition and will be able to pay the full settlement amount. Accordingly, this factor also weighs in favor of approving the settlement.

## 3. The Complexity and Expense of Further Litigation Weighs in Favor of Settlement.

Under the third factor, it is appropriate for the Court to consider "the time interval before any individual class member would be afforded redress." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005). This factor weighs in favor of the settlement where the litigation would "likely drag on for years, [and] require the expenditure of millions of dollars, all the while class members would receive nothing." *Id.* Such is the case here. The risks of further litigation have been outlined above. (Kick Dec. ¶ 23.) With regard to expected duration, as noted, an otherwise strong case could last for a very substantial time if the proposed settlement were not approved, and be extremely expensive to both sides. (Kick Dec. ¶ 24.) Plaintiff's Counsel believes the likelihood for certification is strong, but there is always some risk in getting consumer class actions certified, even the ones which have the strongest merits for certification. If the settlement is not approved, if certification was successful, Plaintiff would likely next face a motion for summary judgment. (Kick Dec. ¶ 23.) After an expensive trial, regardless of which party prevailed, there likely would be appellate practice, further delaying the receipt of actual funds by the class members. (Kick Dec. ¶ 23.) Accordingly, this factor weighs in favor of approving the settlement.

///

---

*voucher claims were actually made.*

4. **The Amount of Opposition to the Settlement Weighs in Favor of Settlement.**

The Eighth Circuit has found that this factor weighs in favor of the settlement where "fewer than 4 percent of the class members objected to the settlement." *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (noting that 4 percent was "significantly fewer than the number of objectors to other settlements that have been approved") (citing *Van Horn v. Trickey*, 840 F.2d 604, 607-08 (8th Cir. 1988)); *De Boer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("The fact that only a handful of class members objected to the settlement similarly weighs in its favor."). Here, to date only one objection has been filed, meaning fewer than 0.01% have objected, and more than 99.99% have not objected. In fact, the single objection is not even signed by a class member, but a household member, so it might not technically even qualify as an objection. (GCG Dec. ¶ 20., Ex. D.)

But perhaps more important for the Court to note, the objection does not actually identify any supposed inadequacy in the proposed settlement, but instead expresses a belief that the case should not be settling at all because it is these overdraft fees are the class members' fault rather than the Defendant's fault, stating that "it is each person's responsibility to keep track of their bank account balances and transactions, allowing adequate time for transactions to process." (*Id.*) Thus, if anything, if this objection is to be credited at all, it actually provides further support for approving the proposed settlement because this class member expresses a belief the class members should not receive anything, yet the class settlement has led to a change of practices which will save members of the credit union $3 million over the next four years plus has brought in $1,360,000 in new money. The objection must therefore be overruled. It appears that Ms. Datica objects not to the settlement but to the very concept of the litigation. That more than 99.99% of class members have not objected and that the single objection appears to believe the case was actually not worth anything, is an overwhelming statement of approval of the proposed settlement. This factor thus weighs in favor of approving the settlement.

B. **The Requested Fee Award and Litigation Costs Should Be Approved**.

The Supreme Court "has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749 (1980) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v. Ticonic National*

8

*Bank*, 307 U.S. 161 (1939)).  "The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to 'prevent the unjust enrichment of persons who benefit from a lawsuit without shouldering its costs.'"  *In re Charter Communs., Inc.*, 2005 U.S. Dist. LEXIS 14772 at *40 (quoting *Boeing*, 444 U.S. at 478).

The Eighth Circuit has recognized two different methods of calculating attorney fee awards. Under the "percentage" approach, the attorneys are awarded a percentage of the overall recovery. *Comerica Mortgage Co.*, 83 F.3d 241, 244 (8th Cir. 1996).  "As courts have routinely recognized, this approach most closely aligns the interests of the lawyers with the class, since the more recovered for the class, the more the attorneys stand to be paid."  *In re Charter Communs., Inc.*, 2005 U.S. Dist. LEXIS 14772 at *40) (citing *Comerica Mortagage Co.*, 83 F.3d at 244); *see also In re Bank America Corp. Secs. Litig.*, 228 F. Supp. 2d 1061, 1064 (E.D. Mo. 2002).  "This approach is also consistent with arrangements in the market place for contingency cases, where the individual client generally agrees to a fee based on amount recovered."  *Id*. (citing *Missouri v. Jenkins*, 491 U.S. 274, 285, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989)).

Under the "lodestar" method, the court awards a premium or multiplier to the sum of the total hours invested by the attorneys multiplied by their hourly rate.  *Comerica Mortgage Co.*, 83 F.3d at 244-46.  The Eighth Circuit approves either method. *Id*.  Accordingly, Class Counsel makes its request for $453,333.33 alternatively under either the "percentage" or the "lodestar" approach, and only one need be found by the Court as supporting the request.

### 1.    The Fee Award Is Appropriate Under the Lodestar Method.

Class Counsel's lodestar, including the lodestar of local counsel Stinson Leonard Street, is $418,354, (Declaration of Richard McCune ["McCune Decl."] ¶ 15; Kick Dec. ¶ 9.)  This  therefore requires only a very modest multiplier of 1.08x to arrive at the requested fee award of $453,333.33, well below the range of multipliers usually requested for a case such as this.  The Eighth Circuit instructs courts to consider the following factors in determining a fee award under the lodestar method:  "a) the number of hours spent in various legal activities by the individual attorneys, b) the reasonable hourly rate for the individual attorneys, c) the contingent nature of success, and d) the quality of the attorneys' work."  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975).

9

The hours and rates of the attorneys are set forth in the Declarations of Richard D. McCune and Taras Kick. Not only are these rates reasonable and in line with market rates, but they have been approved by numerous federal district courts around the country in cases similar to this. (Kick Decl. ¶¶ 7, 8.) Further, the nature of the case was entirely contingent: all attorneys working in this case worked on a contingent basis, with no guaranteed recovery. (McCune Decl. ¶ 12; Kick Decl. ¶ 16.) Finally, the quality of the attorneys' work was high. This is shown by the result. Further, Plaintiff's counsel took three very helpful depositions which counsel used to craft a class certification motion into which much hard work was expended. Class Counsel also participated in two mediations, at which counsel made their case ably to the mediator and Defendant. The requested fee is clearly appropriate under a lodestar analysis.

### 2. The Fee Award is Also Appropriate Under the "Percentage" Approach.

Although if approved under the lodestar method there is no additional requirement to separately analyze the proposed fees pursuant to a "percentage" analysis, the fee request also very easily independently qualifies under a "percentage" request. The Eighth Circuit has awarded attorney's fees in excess of a third of the overall settlement. *In re U.S. Bancorp*, 291 F.3d 1035 (8th Cir. 2002) (awarding 36% of the fund). If for argument's sake the entire $3 million value of the savings from the change in practices brought about by this lawsuit were to be completely discounted, then the fee request is still only 33-1/3% of the new money payment of $1,360,000. But, of course, the savings from the change in practices is *very* real, and has already started to save class members money every month for the last seven months, and will save class members $3 million over four years. (Settlement Agreement ¶ 2; Olsen Decl. ¶ 10; Kick Decl. ¶ 24.) Therefore, the fee requested is actually only about 11% of the total settlement value when considering the full value of the settlement.[3] Courts in this Circuit have analyzed

---

[3] The full value of the settlement including the $3 million in savings in overdraft fees is the appropriate measure to consider for award of attorneys' fees based on the percentage-of-benefit. *Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. 2015) (approving percentage of common fund award and finding that "settlement's allocation of benefits was fair" by including "the value of the nonmonetary relief and *cy pres* award" as "part of the settlement pie"; rejecting objector's argument that analysis of a reasonable attorney fee should "exclud[e] the substantial nonmonetary benefit and the *cy pres* award"); *In re Nutella Mktg. & Sales Practices Litig.*, 589 Fed. Appx. 53, 57 (3d Cir. 2014) ("[f]or purposes of approving the settlement, an exact figure is not required to evaluate the settlement's non-monetary

the following seven factors in ensuring that fee awards are reasonable: "(1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel were exposed, (3) the difficulty and novelty of the legal and factual issues in this case, including whether plaintiffs were assisted by a relevant governmental investigation, (4) the skill of the lawyers, both plaintiffs and defendants, (5) the time and labor involved, including the efficiency in handling the case, (6) the reaction of the class, and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005); *see also In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1104-06 (D. Minn. 2009) (applying the same factors).

### a. The Benefit Conferred on the Class.

Under the first factor, the benefit conferred on the class is considerable. As a result of this lawsuit, MCU as of January 1, 2018, has completely changed the manner in which it assesses overdraft fees away from the "available balance" practice it had been using prior to this lawsuit. This change in practice will save its members $3 million over the next four years. Further, if the settlement is approved, MCU also will make a monetary payment of $1,360,000, into the settlement fund with no reversion of any residue to MCU. The total settlement value of $4,360,000 represents approximately 126% of the most likely expected recovery at trial, and the fee request is only 11% of this total value, or one-third of the new money.

### b. The Risk to which Plaintiff's Counsel Were Exposed.

Class Counsel took this case entirely on contingency and has not been paid a penny to date. (McCune Decl. ¶ 12; Kick Decl. ¶ 16.) Class actions are inherently very risky. Some get thrown out on motions to dismiss. Others have class certification denied. And when class certification is granted, sometimes a motion for decertification is brought later which might be granted. Others have motions for summary judgment granted in favor of defendants. And those which survive all these potential fatalities, still need to prevail at trial, which is never a certainty. Class Counsel (and the class) faced all of these risks in this case, and accordingly a very real risk that they would recover absolutely nothing for their

---

benefits"; upholding district court's award of less than 20% of fees for injunctive relief that defendant had agreed not to oppose. In this case, only 11% of the total value is being sought.

work.  (Kick Decl. ¶ 16.)   Indeed, the Eighth Circuit is replete with examples of unsuccessful class actions.  *See e.g., Glover v. Standard Fed. Bank*, 283 F.3d 953 (8th Cir. 2002) (reversing class certification); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir. 1999) (affirming dismissal of complaint without leave to replead).

"The risks plaintiffs' counsel faced must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day."  *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  Indeed, "[t]he risk of receiving little or no recovery is a major factor in awarding attorney fees."  *Id.*

Here Class Counsel has achieved a very good result for the class, but faced very real serious risks to achieve it. Moreover, Plaintiff's counsel was not aided in any way by a government investigation.

### c.  The Difficulty and Novelty of the Legal and Factual Issues.

This case involved numerous difficult and novel questions of law, such as the interpretation of the Electronic Funds Transfer Act and its embodying regulation, Reg. E, in defining and delimiting the opt-in requirement for financial institutions as to non-recurring debit card and ATM transactions, whether MCU was shielded from liability by use of a model opt-in form, whether MCU's practice of suspending debit cards in the case of a non-opted-in account holder triggering an overdraft violated Reg. E's requirement that the same account terms be offered to opted-in and non-opted-in customers alike, the interpretation of a lengthy consumer contract, and application of Missouri breach of contract law. Ther eis no argument that this was not a very sophisticated nuanced case in a specialized area of law.

### d.  The Skill of the Lawyers.

Class Counsel, Richard D. McCune of McCune Wright Arevalo LLP, and Taras Kick of The Kick Law Firm, APC, are both highly skilled attorneys with extensive class action litigation experience, including numerous appointments as class counsel, and especially  a significant amount of experience in overdraft fee class action cases.  Class Ccounsels' experience is more fully stated in the Declarations of Taras Kick and Richard McCune, filed herewith.  (*See* Kick Decl., ¶¶ 2-4; McCune Decl., ¶¶ 2-5).

///

///

///

### e. The Time and Labor Involved, Including the Efficiency in Handling the Case.

Class Counsel worked hard but efficiently in this case, which spanned over 2.5 years. Class Counsel's lodestar, as well as the lodestar of local counsel Williams Dirks Dameron, exceeds $400,000 to date. (McCune Decl. ¶ 15; Kick Decl. ¶ 9.) During the course of this case, Plaintiff conducted significant discovery, including taking three depositions and propounding voluminous written discovery. (Kick Decl., ¶ 14.) Plaintiff also fully drafted, but did not file, a motion for class certification, including a completed declaration of Plaintiff's database expert. (Kick Decl. ¶ 13.)

### f. The Reaction of the Class.

As noted, the reaction of the class to date has been overwhelmingly favorable. The time to opt out expired,a nd there was only one opt out out of more than 12,000 class members, meaning 99.99% have elected to stay a part of this proposed settlement. (GCG Decl. ¶ 19.). Further, at most, there has been only one objection filed to date, and interestingly the objection does not even try to allege this settlement is anything other than an excellent settlement, but rather argues that Defendant should not be responsible for the class members' claims and that the class members should get nothing. (GCG Decl., Ex.D.). Therefore, the reaction of the class members to date has been overwhelmingly positive.

### g. The Comparison Between the Requested Attorney Fee Percentage and Percentages Awarded in Similar Cases.

Numerous federal courts around the country have awarded one-third of the settlement fund alleged improper overdraft fee class actions similar to this one to the successful class counsel. A non-exhaustive list of cases which have awarded one-third fee in overdraft fee class actions includes the following cases: *Todd Wodja v. Washington State Employees Credit Union*, Washington State Superior Court for the County of Pierce, Case No. 16-2-112148-4; *Tracy Fry v. MidFlorida Credit Union*, Case No. 8:15-CV-2743 (M.D. Fla. 2018) (fees awarded of one-third); *Ketner v. State Employees Credit Union of Maryland, Inc.*, Case No. 1:15-cv-03594 (D. Md. 2018) (fees awarded of one-third); *Lane v. Campus Federal Credit Union*, Case No. 3:16-cv-00037 (M.D. La. 2017) (fees awarded of one-third); *Phitsamay Fernandez v. Altura Credit Union*, Riverside County Superior Court, Case No. RIC1610873 (fees awarded of one-third); *Josefina Hernandez v. Logix Federal Credit Union*, Los

Angeles County Superior Court, Case No. BC628495 (fees awarded of one-third); *Santiago v. Meriwest Credit Union*, Sacramento County Superior Court, Case No. 34-2015-00183730 (fees awarded of one-third); *Patrick Lynch v. San Diego County Credit Union*, San Diego County Superior Court, Case No. 37-2015-00008551 (fees awarded of one-third); *Towner v. 1st MidAmerica Credit Union*, Case No. 3:15-cv-1162 (S.D. Ill. 2017) (fees awarded of one-third); *Hernandez v. Point Loma Credit Union*, San Diego County Superior Court, Case No. 37-2013-00053519 (fees awarded of 49%); *Gray v. Los Angeles Federal Credit Union*, Los Angeles County Superior Court, Case No. BC625500 (fees awarded of one-third); *Moralez v. Kern Schools Federal Credit Union*, Kern County Superior Court, Case No. BCV-15-100538 (fees awarded of one-third).

There also are numerous cases in which fees of one-third or more have been awarded in this Circuit. *See, e.g., U.S. Bancorp*, 291 F.3d at 1038 (awarding 36% of $ 3.5 million settlement fund); *In re Select Comfort Corp. Secs. Litig.*, 2003 U.S. Dist. LEXIS 26409, No. 99-884 (D. Minn. Feb. 28, 2003) (awarding 33.3% of the $5,750,000 settlement); *In re E.W. Blanch Holdings, Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26402, No. 01-258 (D. Minn. June 16, 2003) (awarding 33.3% of a $20 million settlement); *KK Motors v. Brunswick Corp.*, No. 98-2307 (D. Minn. March 6, 2000) (awarding 33.3% of $30 million settlement fund); *In re Airline Ticket Commission Antitrust Litig.*, 953 F. Supp. 280, 285-86 (D. Minn. 1997) (awarding 33.3% of $86 million fund); *In re SciMed Life Sec. Litig.*, No. 3-91-0575 (D. Minn. July 17, 1995) (awarding 33.3% of $5 million fund plus costs); *In re Control Data Sec. Litig.*, No. 3-85-1341 (D. Minn. Sept. 23, 1994) (awarding 36.96% of $8 million fund); *In re Employee Benefit Plans Sec. Litig.*, 1993 U.S. Dist. LEXIS 21226, 1993 WL 330595 (D. Minn. June 2, 1993) (awarding 33.3% of the $4.2 million cash payment and 33.3% of the $ 6.5 million debentures to be issued).

In sum, although not required since the fee request is already proven under the "lodestar" analysis, it is also independently and alternatively appropriate under the "percentage" analysis.

## 2. Class Counsels' Costs Should Be Reimbursed.

With regard to costs, as detailed in the accompanying declarations of Richard McCune and Taras Kick, for Class Counsel's litigation costs, although the Notice disseminated to class members stated that litigation costs to be reimbursed may be up to $35,000, Class Counsel and local counsel together seek reimbursement only of a total of $33,941.02, and the costs constituting this amount are detailed in the

14

declarations. (McCune Decl. ¶ 17; Kick Decl. ¶ 19.)  These costs were expended in furtherance of the litigation.  For claims administrator's costs, the Notice to class members stated GCG's costs of administration may be as high as $41,250, but GCG is seeking approval only of $34,375, as detailed in the concurrently filed GCG Decl. at ¶ 21.

### C. The Proposed *Cy Pres* Recipients Should Be Approved.

In the motion for preliminary approval of class action settlement, and in the settlement agreement, counsel for Plaintiff stated that they would nominate Public Citizen, a non-profit which represents the interests of consumers against corporations, including financial institutions (*see* Declaration of Robert Weissman in Support of Motion for Preliminary Approval ("Weissman Decl.") ¶ 4), to be a joint *cy pres* recipient in this case.  The other *cy pres* recipient, receiving the other fifty percent of the residue, is proposed to be Truman Heritage Habitat for Humanity.  Public Citizen has been involved in litigation throughout the Federal Circuits, and consistently engages in advocating for consumer rights, including with regard to financial institutions. (Weissmann Decl. ¶¶ 4, 9, 10.)  It intends to use the money from the *cy pres* in this matter, if approved by the Court, to support its research and advocacy supporting strong protections for consumers, including consumers in Kansas and Missouri.  (Weissmann Decl. ¶ 3).[4]

### D. The Class Representative's Service Award Should Be Approved.

The Settlement Agreement states that Defendant will not object to a service award to the class representative of $10,000, but has the right, if it wishes, to object to a request of more than $10,000. Ms. Bowens, the class representative, is requesting an award in excess of $10,000.  She submitted a supplemental declaration filed in support of the preliminary approval motion which makes her case in support of this award, which she requests be at least 5% of the new money of $1,360,000, and specifies her reasons for why she believes this is fair, and that Declaration is referenced herein again for the Court's review.  Ms. Bowen has also indicated she will be available for any questions the Court might

---

[4] Neither plaintiff, nor plaintiff's counsel, nor MCU, nor defense counsel will benefit financially in any way from the *cy pres* award.  Plaintiff's counsel are members of Public Citizen, but have no control over how Public Citizen spends its money.  Additionally, neither Class Counsel is on a list of firms used by it for litigation.  (Kick Decl. ¶ 22; McCune Decl. ¶ 21.)

15

have. (Kick Decl. ¶ 21.) Class Counsel can state that Ms. Bowen was very helpful to the prosecution of the case. (Kick Decl. ¶ 21.) She always provided all documents requested, and answered all questions asked. (*Id*.) Furthermore, Ms. Bowen was very involved in the case, asking questions consistently, including about the status, and also personally attended both of the sessions of the mediation with the mediator John Phillips. (*Id*.) The amount of Ms. Bowens request was noted in the Notice which went out to class members.

### E. Class Notice Satisfied Due Process.

"Notice of a settlement proposal need only be as directed by the district court, Fed. R. Civ. P. 23(e), and reasonable enough to satisfy due process." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995) (citing *Grunin v. International House of Pancakes*, 513 F.2d 114, 120-22 (8th Cir.), *cert. denied*, 423 U.S. 864, 46 L. Ed. 2d 93, 96 S. Ct. 124 (1975)). Here, 95.99% of the class members successfully received the notice ordered by this Court. (GCG Decl. ¶ 15.) This far more than satisfies due process.

### F. The Proposed Settlement Class Should Be Certified.

In granting preliminary approval of a proposed settlement, the Court must determine that the proposed settlement class is appropriate for certification. MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, the proposed class representative, and the proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a)(1-4). In addition to meeting the requirements of Rule 23(a), a plaintiff seeking class certification must also meet at least one of the three provisions of Rule 23(b). Fed. R. Civ. P. 23(b). When a plaintiff seeks class certification under Rule 23(b)(3), the representative must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16. Because Plaintiff meets all of the Rule 23(a) and 23(b)(3) prerequisites, certification of the proposed Class is proper.

#### 1. Class Definition.

The class includes any member of MCU who, between the implementation of Defendant's

automated overdraft program on April 1, 2011 and September 30, 2015, was assessed an overdraft fee when the member had sufficient money in his or her ledger balance, but insufficient money in his or her available balance to complete the transaction that caused the fee.  (Settlement Agreement ¶ 1(e).)  The parties already have determined that there are 12,031 members in the class, and have identified who they are.  (*See* Olsen Decl. ¶ 9.)

### 2. The Requirement of Numerosity is Satisfied.

The first prerequisite of class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1).  There is no specific number of class members required, though the numerosity requirement is typically satisfied when the class comprises at least forty members  *See, e.g. Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) (certifying class of between 20 and 65); *Ark. Educ. Asso. v. Bd. of Educ.*, 446 F.2d 763, 769 (8th Cir. 1971) (finding that 20 members is sufficient to meet the numerosity requirement);Newberg on Class Actions, at § 3:05 (4th ed. 2002) (joinder is impracticable where the class is composed of more than 40 persons). In this case, the number of class members is over 10,000, far exceeding that needed for numerosity. (Olsen Decl. ¶ 9.)

### 3. The Requirement of Commonality is Satisfied.

The second requirement for certification requires that "questions of law or fact common to the class" exist.  Fed. R. Civ. P. 23(a)(2).  Commonality is demonstrated when the claims of all class members "depend upon a common contention . . . that is capable of classwide resolution."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*. "Even a single common question will do."  *Dukes*, 131 S. Ct. at 2556.  In other words, commonality exists where a question of law linking class members is substantially related to resolution of the litigation even where the individuals may not be identically situated.  *See, e.g., In re Aquila ERISA Litigation*, 237 F.R.D. 202, 207 (W.D. Mo. 2006) ("This requirement imposes a light burden on the plaintiff seeking class certification and does not require commonality on every single question raised in a class action.") (citing *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) ("The rule does not require that every question of

law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.") (internal citations and quotations omitted). Here, not only do there exist common questions of law or fact, the common questions predominate over any individual ones. The theories underlying the class claims involve a uniform overdraft fee practice and uniform contractual terms. It is undisputed that Defendant uniformly and systematically used the "available balance" to determine whether to assess an overdraft fee on a transaction, as opposed to utilizing the actual money in the account, i.e., the "ledger balance" or "actual balance" as Plaintiff contends should have been done under the relevant contracts. Determination of this contention, regardless of the answer, will resolve the allegations for the whole Class in one stroke. As such, the commonality requirement is satisfied.

### 4. The Requirement of Typicality is Satisfied.

Rule 23 next requires that the class representative's claims be typical of those of the class members. Fed. R. Civ. P. 23(a)(3). The test for typicality is not demanding; typicality "means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir; *see also* 1 Newberg on Class Actions § 3.13, at 3-76 (3d ed. 1992). "The burden is 'fairly easily met so long as other class members have claims similar to the named plaintiff.'" *Id.* (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*

Plaintiff's claims are not only typical of those of the other putative class members, they are virtually indistinguishable. There is no dispute that Plaintiff entered into the uniform and standardized Opt-In Contract and that she was assessed overdraft fees when there was enough money in the account to complete the requested transaction. At a minimum, this occurred on January 12, 2015, when she was assessed two $28 overdraft fees on transactions for $20 and $7.99, despite the fact that her account contained $96.98 before she requested the transactions at issue. (Complaint ¶ 20.) Plaintiff also alleges the same legal theories as the rest of the class of breach of contract/breach of the covenant of good faith

and fair dealing and violation of Regulation E.  Therefore, typicality is satisfied.

### 5. The Requirement of Adequate Representation is Satisfied.

The final Rule 23(a) prerequisite requires that the proposed class representative has and will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "In order to satisfy this requirement, Plaintiffs must show that: 1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge… Otherwise stated, adequate representation turns upon the qualifications and experience of plaintiffs' counsel to conduct the litigation and whether the plaintiffs have any interests antagonistic to the class."  *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004) (quoting *Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 614 (D. Minn. 2000).  As with the typicality requirement, this second element requires that the interests of the named plaintiffs are aligned with the unnamed class members to ensure that the class representative has an incentive to pursue and protect the claims of the absent class members.  *See Amchem*, 521 U.S. at 626 n. 20, 117 S.Ct. 2231 ("The adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'")

Proposed Class Counsel, Richard McCune of McCune Wright Arevalo, LLP, and Taras Kick of The Kick Law Firm, APC, both have significant class action, litigation, and trial experience, are competent, and have been competent in representing the classes.  Both law firms have extensive experience in consumer class actions, and in particular, expertise in overdraft fee litigation.  (McCune Decl. at ¶¶ 2-5; Kick Decl. at ¶¶ 2-4.)  The interests of Plaintiff Joy L. Bowens are aligned as she was charged overdraft fees when her account had a positive ledger balance.  Further, she understands that she is pursuing this case on behalf of all class members similarly situated and understands she has a duty to protect the absent class members.  (Kick Decl. ¶ 21.)  She has actively participated in the litigation by frequently conferring with class counsel about the case and its status, assisting class counsel by gathering documents and other information, testifying at deposition, and being prepared and willing to

testify at trial on behalf of the class if necessary.   (Kick Decl. ¶ 21.)

### 6.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

Once the prerequisites of Rule 23(a) have been met, a plaintiff must also demonstrate

that she satisfies the requirements of Rule 23(b).  *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 456 (W.D. Mo.

2004). To certify a class under Rule 23(b)(3), the plaintiff must show that (1) the common questions of

law and fact predominate over questions affecting only individuals and (2) the class action mechanism is

superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *Carpe*,

224 F.R.D. at 456.

### a.      Common Questions of Law and Fact Predominate.

The predominance requirement questions whether the proposed class is "sufficiently cohesive to

warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  "Common questions of law and fact

need only predominate the claims of the proposed class; such claims need not be dispositive of the

litigation."  *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004) (citing 7A Wright, Miller &

Kane Federal Practice and Procedure, § 1778 at 528-29 ("When one or more of the central issues in the

action are common to the class and can be said to predominate, the action will be considered proper

under Rule 23(b)(3) even though other important matters will have to be tried separately.").  "The fact

that some individual questions will be involved in the case does not preclude a finding that the common

issues will predominate."  *Id*.  "Judicial economy factors and advantages over other methods for

handling the litigation as a practical matter underlie the predominance and superiority requirements for

class actions certified under Rule 23(b)(3)."  Rubinstein, et al., 2 Newberg on Class Actions § 4:24.

Analysis of the predominance requirement "begins, of course, with the elements of the underlying cause

of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184.  As the Supreme Court

most recently confirmed:

> When one or more of the central issues in the action are common to the class and can be said to
> predominate, the action may be considered proper under Rule 23(b)(3) even though other
> important matters will have to be tried separately, such as damages or some affirmative defenses
> peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016).  Both the contract claims and violation

of Regulation E claims are subject to common proof, and thus it would be more efficient to decide those

common issues via the class action mechanism.

As MCU does not dispute its practice of charging fees based on the available balance while the ledger balance contains enough money to pay for the transaction, the only issue is whether the contract permitted it to do so. In short, the only task the trier of fact needs to perform in adjudicating the breach of contract claim is to determine the meaning of the contractual language. To the extent there is any ambiguity, the intent of the parties can be determined by examining the contract itself, construing any ambiguity against the drafter. *Triarch Indus. v. Crabtree*, 158 S.W.3d 772, 777 n.7 (Mo. 2005) ("ambiguities in contracts should be construed against the drafter"); *Transit Cas. Co. v. Certain Underwriters at Lloyd's*, 963 S.W.2d 392, 398 (Mo. Ct. App. 1998) ("ambiguity must be read against the draftsman of the provisions in question"). Further, under Missouri law, the determination of the parties' intent in entering a contract is a question of objective intent. *Newco Atlas, Inc. v. Park Range Constr., Inc.*, 272 S.W.3d 886, 891 (Mo. Ct. App. 2008) ("Where the language of the contract is unambiguous, the intent of the parties will be ascertained from the language of the contract alone and not from extrinsic or parol evidence of intent."). For this reason, among others, courts often grant class certification for classes alleging breach of a common contract. *Boswell v. Panera Bread Co.*, 311 F.R.D. 515, 527 (E.D. Mo. 2015) (noting that breach of contract claims for uniform contracts are "particularly well suited for class treatment"); *see also Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (collecting cases from around country for proposition that "[a]n overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment.").

### b. This Class Action is the Superior Method of Adjudication.

Rule 23(b)(3) also requires that a certifying court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts in the Eighth Circuit have noted that class actions are superior particularly for "negative value" suits, i.e., suits where the possible recovery is less than the cost of bringing the suit. *McCollins v. Bayer Corp. (In re Baycol Prods. Litig.)*, 265 F.R.D. 453, 458 (D. Minn. 2008) ("*Baycol Prods. I*") ("[T]he most compelling rationale for finding superiority in a class action is whether the action is a negative value suit.") (quoting *In re Baycol Prods. Litig.*, 218 F.R.D.

197, 210 (D. Minn. 2003) ("*Bayocol Prods. II*")).  As Judge Posner has stated, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."  *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661. (7th Cir. 2004).  As the Supreme Court stressed in *Amchem*, 521 U.S. at 617:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

The desirability of concentrating the litigation in the present forum is illustrated by the fact that the amount of an individual damage instance is at most a $28 overdraft fee.  There is no question that a large number of class members have suffered damages in an amount that could not justify or sustain individual lawsuits, and the only choice is between a class action and no action.  There is no question that a large number of class members have suffered damages in an amount that could not justify or sustain individual lawsuits, and the only choice is between a class action and no action.  Plaintiff is not aware of any additional suits instituted by or against the class members concerning the subject matter of the settlement.  Superiority is met.

Accordingly, all factors weigh in favor of class certification.

## V.      Conclusion.

Plaintiff respectfully requests that the Court grant final approval of the settlement, the request for attorney's fees and costs, the request for approval of class administrator expenses, and the request for a service award to the class representative, in the entirety.

Dated: July 16, 2018                                    Respectfully submitted,


                                                        /s/ Taras Kick
                                                        Taras Kick, *Pro Hac Vice*
                                                        taras@kicklawfirm.com
                                                        Robert Dart, CA State Bar #264060*
                                                        robert@kicklawfirm.com
                                                        **THE KICK LAW FIRM, APC**
                                                        815 Moraga Drive
                                                        Los Angeles, California 90049
                                                        Telephone:   (310) 395-2988

22

Facsimile: (310) 395-2088

Matthew Lee Dameron, Bar #52093
matt@williamsdirks.com
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, MO 64105
Telephone: (816) 876-2600
Facsimile: (816) 221-8763

Richard D. McCune, *Pro Hac Vice*
rdm@mccunewright.com
Jae (Eddie) K. Kim, CA State Bar #236805*
jkk@mccunewright.com
**MCCUNE • WRIGHT • AREVALO LLP**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Counsel for Plaintiff Joy L. Bowens and the
Putative Class

*Pro Hac Vice applications to be submitted

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 16, 2018, a copy of the foregoing document was electronically filed using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

Respectfully submitted,

/s/ Robert Dart